UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ABBY RIOS, )<br>　　　　　　　　　　　　　　　　　　) <br>　　　　　　　　Plaintiff, ) <br>　　　　　　　　　　　　　　　　　　) <br>vs. ) <br>　　　　　　　　　　　　　　　　　　) <br>WAL-MART STORES, INC., ) <br>　　　　　　　　　　　　　　　　　　) <br>　　　　　　　　Defendant. ) <br>_____) | Case No. 2:11-cv-01592-APG-GWF<br><br>**ORDER**<br><br>**Motion for Spoliation Sanctions - # 79** |

　　　　This matter is before the Court on Defendant Wal-Mart Stores, Inc.'s Motion for Spoliation Sanctions for Plaintiff's Suppression of Evidence (#79), filed on January 11, 2014.  Plaintiff filed her Response to Defendant's Motion (#87) on January 28, 2014.  Defendant filed its Reply in Support of its Motion (#91) on February 7, 2014.

## BACKGROUND

　　　　On August 14, 2009, Plaintiff Abby Rios allegedly slipped on spilled yogurt in Defendant's Wal-Mart store which caused her to fall and injure her back.  Dr. Jaswinder Grover performed lumbar spine surgery on Plaintiff in March 2011.  Plaintiff alleges that this surgery was the result of the injury she received in the slip and fall accident.  Ms. Rios was previously involved in a motor vehicle accident on May 3, 2007 in which she injured her left knee, neck, and upper and lower back.  Wal-Mart alleges that Plaintiff concealed the fact that she injured her low back in the prior accident and that she willfully failed to disclose a July 2, 2007 MRI scan which showed degenerative conditions in her lumbar spine.  *See Motion for Sanctions (#79), Exhibit A, 7/02/2007 Radiology Report.*  Although Wal-Mart was able to obtain a copy of the MRI report, by the time it requested the MRI films from Nevada Imaging Centers, they had already been destroyed pursuant

to Nevada Imaging Centers' five (5) year document retention/destruction policy.  Defendant argues that it has been prejudiced by the destruction of the films because its medical expert is unable to compare them to the MRI films taken after the August 14, 2009 slip and fall accident.

      Plaintiff served her initial disclosures pursuant to Fed.R.Civ.Pro. 26(a) on November 18, 2011.  The disclosures listed the physicians and chiropractor who had information regarding the nature and extent of Plaintiff's injuries resulting from the August 14, 2009 accident.  *Motion for Sanctions (#79), Exhibit C*.  Plaintiff represented that she had "provided all medical records documenting the diagnoses of Plaintiff's injuries, treatment therefore, and costs and billings incurred therefore and status of recovery presently in Plaintiff's possession."  *Id., pg. 3*.  Defendant Wal-Mart served interrogatories and requests for production of documents on the Plaintiff.  Prior to receiving Plaintiff's written discovery responses, Defendant took her deposition on December 6, 2011. Defendant has submitted the following portions of Ms. Rios's deposition testimony in support of its motion for sanctions:

      Q.    And you only hurt your left knee [in the May 2007 accident]; right?

      A.    Yes.

      Q.    And you didn't hurt your back?

      A.    No.

      Q.    You didn't hurt your neck?

      A.    No.

*Motion for Sanctions (#79), Exhibit B, Plaintiff's Deposition, pgs. 19:25 to 20:5.*

      Q.    Prior to your incident at Wal-Mart, had you ever reported back pain to a doctor?

      A.    Yes.

      Q.    And when was that?

      A.    Uh, I can't remember.

      Q.    Was it within the last five years?

      A.    Excuse me.  You say after?

      Q.    Before the Wal-Mart incident.

| | | |
|---|---|---|
| 1 | A. | Before Wal-Mart accident? |
| 2 | Q. | (Nodding head.) |
| 3 | A. | No. |
| 4 | Q. | So just to clarify, you had never reported -- |
| 5 | A. | Yes. |
| 6 | Q. | -- back pain to a doctor before the Wal-Mart incident? |
| 7 | A. | Yes. |
| 8 | Q. | Is that correct? |
| 9 | A. | Correct. |
| 10 | Q. | Again, before the Wal-Mart incident, had you ever reported neck pain to a doctor? |
| 11 | A. | No. |
| 12 | Q. | Had you ever had any sort of low back pain that you hadn't reported to a doctor, again, before the Wal-Mart incident? |
| 13 | A. | No. |

*Motion for Sanctions (#79), Exhibit B, Plaintiff's Deposition, pgs. 22:15 to 23:18.*

| | | |
|---|---|---|
| | Q. | Had you ever specifically injured your lower back, other than the Wal-Mart incident? |
| | A. | No. |

*Id., pg. 150:21-23.*

Plaintiff submits the following excerpts from Ms. Rios's deposition in support of her opposition to the motion for sanctions:

    A.    Exactly.  Also I want to -- I remember something about my accident.  And it was long time ago, my car accident.

        When I went to the chiropractic, yeah, I have a -- you know, after the accident, I got a -- a little pain on my back.
        So he sent me to do MRIs and everything.  And he told he, um, yeah, I got a problem, but it was nothing bad.
        It was just for the accident.

    Q.    You went to the hospital after the car accident?

| | | |
|---|---|---|
| 1 | A. | Yes. |
| 2 | Q. | Which hospital did you go to? |
| 3 | A. | UMC. |
| 4 | Q. | And then you went to a chiropractor? |
| 5 | A. | Yes. |
| 6 | Q. | Do you remember who that was? |
| 7 | A. | Dr. Johnson. |
| 8 | Q. | Do you remember where you went to get the MRI after your car accident? |
| 9 | A. | When? |
| 10 | Q. | Where. |
| 11 | A. | Where? No, I can't remember. |
| 12 | Q. | Did you see any other doctors, other than the doctors at UMC or Dr. Johnson after the car accident? |
| 13 | | |
| 14 | A. | LaTourette is in especially on my -- my knee. |
| 15 | Q. | Dr. LaTourette did the surgery on your knee? |
| 16 | A. | Yes, correct. |
| 17 | Q. | What did Dr. Johnson do for you? |
| 18 | A. | Uh, it was my chiropractic, and he take me MRIs and stuff to be what I need. |
| 19 | Q. | What did he do for your back? |
| 20 | A. | Oh, just MRIs and -- they say everything was good, like just I have a -- a little pain, because it was for the accident. |
| 21 | | |
| 22 | | But everything was good. |
| 23 | Q. | And where did you have that pain, where -- what area -- |
| 24 | A. | A little -- |
| 25 | Q. | -- of your back? |
| 26 | A. | -- bit of my neck. But they take me MRIs for everything. Because they -- want to be sure everything was okay. |
| 27 | | |

*Plaintiff's Response (#87), Exhibits 11, 12 and 13, Plaintiff's Deposition, pg. 68:9-70:5.*

4

Plaintiff served her answers to Defendant's interrogatories on December 21, 2011.

Defendant's Interrogatory No. 5 stated as follows:

> If, **_on or after August 14, 1999_**, you were involved in any accident(s) and/or incident(s) (other than the subject incident) that resulted in bodily injury(s) to you, please state:
>
> (a) the date and place where each such accident and/or incident occurred;
>
> (b) the nature of each such accident and/or incident and the nature of any and all resulting bodily injury(s) to you; and
>
> (c) the name, address, and treatment procedures of any and all healthcare providers and healthcare facilities with which you treated and/or consulted for any injury to you resulting from any such accident and/or incident.

Plaintiff answered Interrogatory No. 5 as follows:

> Objection, compound, irrelevant, vague and overbroad as to time.
>
> (a) May 2007 on Rainbow and Washington.
>
> (b) Car Accident, I injured my left knee and do (sic) to the injury I had surgery on my left knee.
>
> (c) Dr. Johnson, 2100 S. Maryland, Suite 8, Las Vegas, NV 89104 and Gary J. Latourette, M.D. 2100 Pinto Lane, Las Vegas, NV 89106.

*Defendant's Motion for Sanctions (#79), Exhibit D, pg. 4.*

Interrogatory No. 10 stated:

> Please list each and every injury, symptom, and/or ailment enumerated in your answer to Interrogatory No. 9 that you suffered, sustained, and/or experienced at any time prior to your alleged incident at Wal-Mart Store Number 4356 on August 14, 2009.

Plaintiff answered Interrogatory No. 10 as follows:

> Objection, overbroad as to time, vague, calls for speculation and expert opinion, without waiving same. Prior to the accident at Wal-Mart I had been in car accident where I received chiropractic treatment for my neck and back as well as for my knee.

*Id., pg. 8.*

Plaintiff also served her responses to Defendant's Requests for Production of Documents on December 21, 2011. *Defendant's Motion for Sanctions (#79), Exhibit E.* Defendant's Request No. 5 stated as follows:

> If your response to Interrogatory No. 5 (served on November 21, 2011) is affirmative, please produce each and every document related to such injury, treatment, and/or consultation.

Plaintiff responded to Request No. 5 as follows:

> Objection, compound and irrelevant. Without waiving same Defendant has produced all documents currently in her possession.

Dr. Gary LaTourette, orthopedic surgeon, wrote a July 19, 2007 report of his Initial Evaluation of Ms. Rios. *Defendant's Motion for Sanctions (#79), Exhibit G.* Dr. LaTourette stated that Ms. Rios was referred to him by Dr. Nassiri. (It is the court's understanding that Dr. Edward Johnson was associated with Dr. Nassiri's clinic.) Under "History of Present Illness," Dr. LaTourette stated as follows:

> The patient was a restrained driver of a vehicle that was crossing an intersection when a mid-sized truck made a U-turn in front of her causing her to strike that vehicle. Her left knee hit the dashboard. She had immediate pain and swelling of the knee. She was transported by ambulance to UMC where she was evaluated and released. She then sought treatment with Dr. Nassiri and has been having therapy which is helping for upper and lower back. She continues to have pain and instability of the left knee. MRI of the left knee shows complete disruption of the anterior cruciate ligament and medial meniscus tear.

Dr. LaTourette performed surgery on Ms. Rios's left knee on February 21, 2008. *Defendant's Motion for Sanctions (#79), Exhibit G, Dr. LaTourette's 2/21/08 Operative Report.* The surgery included (1) major synovectomy, left knee; (2) medical meniscectomy, left knee; (3) partial lateral meniscectomy, left knee; and (4) repair of anterior cruciate ligament, left knee. Under "Findings," Dr. LaTourette stated: "The anterior cruciate ligament was totally torn from its femoral notch attachment. The medial meniscus was shredded. The lateral meniscus had several insubstance tears." These records obviously indicate that Ms. Rios's left knee was severely injured in the May 2007 accident. There is no indication in the medical records, however, that Ms. Rios sustained a severe neck or back injury in that accident. She did, however, receive chiropractic treatment for her neck and back and was referred by the chiropractor for an MRI of her lumbar spine.

. . .

. . .

**DISCUSSION**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *LaJocies v. City of North Las Vegas*, 2011 WL 1630331, *1 (D.Nev. 2011), citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). A party has a duty to preserve evidence when it knows or has reason to know that the evidence is potentially relevant to litigation. *Id.*, citing *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). A party may be held responsible for the destruction of evidence by a third person where the party had the ability or opportunity to take reasonable steps to instruct or request that the evidence be preserved, but failed to do so. *Powell v. Texvans, Inc.*, 2011 WL 1099120, *5 (D.Nev. 2011).

Ms. Rios gave contradictory testimony during her deposition as to whether she suffered any back injury prior to the August 14, 2009 slip and fall accident. Initially, Ms. Rios testified that she had not injured her back in the May 2007 motor vehicle accident. Later in the deposition, however, she amended her answer and stated that she experienced a little back pain following the May 2007 motor vehicle accident and that her chiropractor referred her for an MRI of her back. Ms. Rios was unable to recall where the MRI was performed. Ms. Rios may be subject to impeachment at trial based on her deposition testimony. There is no basis to conclude, however, that Ms. Rios concealed the fact that she received treatment for her back following the May 2007 motor vehicle accident or concealed that she had been referred for an MRI of her low back following that accident. She disclosed both matters during her deposition. Ms. Rios also stated in her response to Interrogatory No. 10 that she had been in a prior car accident and had received chiropractic treatment for her neck and back, as well as for her knee.

Ms. Rios had no obligation to disclose her prior medical conditions or treatment in her initial disclosures under Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure. Rule 26(a)(1)(A) does not require a party to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use. *See* Advisory Committee Notes to 2000 amendments to Rule 26(a). *See also Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 620 (C.D.Cal. 2013),citing *Yaccarino v. Motor Coach Indus., Inc.*, 2006 WL 5230033, *6 (E.D.N.Y. 2006);

1  *Ruddell v. Weakley County Sheriff's Dep't*, 2009 WL 7355081, *1 (W.D.Tenn. 2009); and *Gomas v. City of New York*, 2009 WL, *2 (E.D.N.Y. 2009).

Ms. Rios also had no obligation to produce medical records relating to the diagnosis or treatment of injuries or conditions she suffered from prior to the August 14, 2009 accident in response to Defendant's requests for production--unless she had those records in her possession, custody or control. *See* Fed.R.Civ.Pro. 34(a)(1). In *Clark v. Vega Wholesale Inc.*, 181 F.R.D. 470, 472 (D.Nev. 1998), the court noted that a party need not have actual possession of documents to be deemed in control of them. A party who has the legal right to obtain certain documents is deemed to have control of them. The relationship between the party and the person or entity having actual possession of the documents is central to the determination of control. The court in *Clark* held that a patient does not have custody or control over medical records that are in the possession of her physicians and therefore cannot be compelled to obtain and produce them in response to a Rule 34 request for production. *Clark* noted that the requesting party has the means to obtain relevant medical records directly from the physicians, i.e., through the power of subpoena under Rule 45.

In this case, Plaintiff executed and provided Defendant with a medical authorization to obtain relevant medical records. *See Plaintiff's Opposition (#87), Exhibit 5.* Although Defendant received the medical authorization in December 2011, it apparently did not determine that the July 2007 MRI study was performed by Nevada Imaging Centers in sufficient time to subpoena the films before they were destroyed pursuant to the provider's five year document retention/destruction policy. Assuming that Defendant acted in a completely diligent manner in its efforts to identify where the MRI was conducted and to obtain the films from the provider, there is still no basis to sanction the Plaintiff for their destruction. First, there is no evidence that Plaintiff was in possession of the July 2, 2007 MRI report, or had actual knowledge where the MRI had been performed. Nor is there any evidence that Plaintiff was on notice of Nevada Imaging Centers' document retention/destruction policy such that she can be held responsible for not making efforts to preserve the MRI films before they were destroyed by that provider.

. . .

. . .

# CONCLUSION

The facts and circumstances in this case do not warrant the imposition of sanctions on the Plaintiff for the alleged failure to disclose or preserve the July 2, 2007 MRI films of her lumbar spine. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Wal-Mart Stores, Inc.'s Motion for Spoliation Sanctions for Plaintiff's Suppression of Evidence (#79) is **denied**.

DATED this 22nd day of April, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge